## Case No. 18,130.

YEADON et al. v. PLANTERS' & MECHANICS' BANK et al.

[Betts, Scr. Bk. 125.]

District Court, E. D. South Carolina. June 24, 1843.

BANKRUPTCY—JURISDICTION OF DISTRICT COURT—
MORTGAGED PROPERTY—STATE COURTS.

[1. Under the act of 1841, §§ 2, 11 [5 Stat. 442, 447], the bankruptcy court has no jurisdiction to dispose of the security of a creditor whose mortgage is valid by the state law, and not inconsistent with the provisions of the second and fifth sections of the bankruptcy law, unless the mortgagee claims as a creditor under the bankrupt law. But, when the creditor does come into the bankruptcy proceedings, the court has full jurisdiction to order a sale of the property, and to make good title thereto.]

[2. A suit brought by the assignee under the second section of the act, to recover property fraudulently mortgaged or conveyed, is a "proceeding in bankruptcy," within the meaning of the sixth section of the act, and hence, under that section, as well as under section eight, the district court has jurisdiction of such a suit. But, as there is no language in the act indicating that this jurisdiction is exclusive, it must be considered as concurrent with the state courts, and the court which first obtains jurisdiction will have the right to decide the matter.]

[3. The filing of a petition in voluntary bankruptcy does not confer upon the district court jurisdiction in respect to a mortgagee, who does not come in and prove his debt, but relies solely upon his security; and. if he commences suit in a state court to foreclose the same, before the assignee files a suit to set it aside as a fraud upon the law, the state court will then have the right to decide the matter, to the exclusion of the federal courts.]

[This was a suit in equity by Richard Yeadon, Sandiford Holmes, and James M. Wilson, assignee of Andrew M'Dowall and William G. Mood, bankrupts, against the Planters' & Mechanics' Bank, the Bank of South . Carolina, and others, to procure a sale of certain property mortgaged by the bankrupt to the defendants, for an account of rents and profits thereof, and for an injunction to restrain defendants from prosecuting a suit in the state courts, etc.]

GILCHRIST, District Judge. It appears in this case that the firm of M'Dowall, Hayne & Co., being indebted to the Planters' & Mechanics' Bank, the Bank of South Carolina, and certain other banks in the city of Charleston, in various sums of money, amounting to upwards of $57,000, as drawers of certain notes, Andrew M'Dowall, one of the said firm, for the purpose of better securing the payment of the several sums of money due to the said banks, according to the true intent and meaning of the notes, on the 15th of August, 1842, executed a mortgage to them in fee simple, with a defeasance, of real estate in the city of Charleston, and of a lot of land, with the buildings thereon, situated in the village of Moultrieville, Sullivan's Island, estimated to be worth together at least 75 per cent. of the amount of their claims. It further appears that on the 31st of December, 1842, the said Andrew M'Dowall and William G. Mood, another member of the said firm of M'Dowall, Hayne & Co., filed their petitions in this court to be declared bankrupts, the said Andrew M'Dowall inserting in his schedule annexed to his petition the property mortgaged by him to the banks; and that on the 30th January, 1843, they were severally declared bankrupts by this court, and the complainants appointed assignees of their respective estates, in conformity with the provisions of the act of congress "to establish a uniform system of bankruptcy throughout the United States," passed August 19, 1841. On the 23d day of February, 1843, the said Planters' & Mechanics' Bank filed their bill in the court of equity of this state, for the Charleston district, against the present complainants, the other banks, and others, as defendants, for a foreclosure of the aforesaid mortgage, and sale of the mortgaged premises for the payment of the amounts due the said banks, in preference to all creditors of the bankrupts, and for other relief; and this case now comes before me on a bill filed on the equity side of the court by the assignees of the bankrupts against the Planters' & Mechanics' Bank, the Bank of South Carolina, and others, for an account of the rents and profits of the mortgaged premises, which the banks have received, for an injunction to restrain the said Planters' & Mechanics' Bank, their agents and officers, from further prosecuting their suit in equity in the state court against

the present complainants, for a sale of the mortgaged premises by a decree of this court, and the application by this court of the proceeds of such sale, according to law, duly respecting all legal preferences and liens, and for other relief; the present complainants alleging in their bill that the said mortgage is null and void under the bankrupt act of 1841, as having been made and given "in contemplation of bankruptcy," and in violation of the provisions of that act.

The suit now before the court is certainly an important case, whether it be considered with reference to the amount of property which may be affected by the present decision, or as regards the various questions in relation to the jurisdiction of this court which have been brought into discussion. The zeal and ability displayed by the counsel engaged in the cause, and which have materially aided this court in forming its judgment, evince their sense of the importance of the case. Questions which affect the jurisdiction of courts of justice are always deserving of the most serious consideration, for, while no judge should willingly usurp jurisdiction, the judge, who regards his official obligations will be careful not to decline the exercise of any powers with which he is legitimately invested, and, if in the discharge of his duties, the jurisdiction of his court should unfortunately clash with the jurisdiction of another tribunal, however much he might regret the circumstance, it should not form in his mind any good cause for a relinquishment of his authority. Whenever, therefore, such questions arise, the judgment of the court should be framed and pronounced without regard to any results that may occur from it. Taking this as the proper view of my official duty, I shall now proceed to express my opinion on the points involved in the consideration of the case submitted to me, and the first subject of inquiry is as to the jurisdiction of this court, under the bankrupt act of the United States of 1841, in relation to the claims of a bankrupt's mortgage creditors. The last proviso of the second section of the act declares that nothing therein "contained shall be construed to annul, destroy or impair any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid, by the laws of the states respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act." Under this proviso all mortgages which are valid by laws of the states, respectively, and which are not inconsistent with the provisions of the second and fifth sections of the act, are protected from the operations of the act. In declaring that nothing contained in the act "shall be construed to annul, destroy or impair" any such mortgage, it was evidently the intention of the law makers that such mortgages should be protected

as privileged liens; and, such mortgages being excepted from the general provisions of the act, the rights acquired thereby are not held under the act, but independently of it. This view of the subject receives confirmation from the 11th section of the act, which declares "that the assignee shall have full authority, by and under the order and direction of the proper court in bankruptcy, to redeem and discharge any mortgage or other pledge, or deposit, or lien upon any property, real or personal, whether payable on presentation or at a future day, and to tender a due performance of the conditions thereof." This section points out the mode by which a valid and existing lien on the property of the bankrupt is to be removed, and, taking it in connection with the proviso of the second section, I understand the law to be that the court in bankruptcy cannot dispose of such security of a creditor without his consent, but that the assignee may, under the direction of the proper court in bankruptcy, redeem and discharge the same. There must be some act done on the part of the creditor holding such security to bring his case within the jurisdiction of the court in bankruptcy, and, in accordance with this view, it was held in Ex parte Jackson, 5 Ves. 357, that the lord chancellor has no authority in bankruptcy to compel a second mortgagee, not claiming under the commission, but resting on his security, to join in a sale obtained by a prior mortgagee, the sale not producing enough for both mortgages. In that case the second mortgagee, not having attempted to prove his debt, chose to rest on his security, and refused to join in the sale, and the lord chancellor, while admitting that he could not make a title unless the second mortgage, as well as the first, was paid, held this language: "If the second mortgagee claims anything as a creditor, I have a hold upon him no doubt." Now let these principles be applied to the claims of the mortgagees of the case now before this court, and it is unnecessary here to inquire whether the mortgage executed by Andrew M'Dowall is such a mortgage as is contemplated by the proviso of the second section of the act of 1841, referred to above. It is sufficient, for the purposes of this argument, to suppose that it may be such a mortgage. If it be, I am of opinion that the mortgagees, not claiming as creditors under the bankrupt act, but choosing to rest on their security, they are not compelled to submit their rights to the adjudication of this court. But I am at the same time well satisfied that this court can entertain jurisdiction of any mortgage given by a bankrupt, upon the petition of the mortgagee, and that, under that part of the 6th section of the act of 1841 which gives to the district court in every district "jurisdiction in all matters and proceedings in bankruptcy arising under" the act, the court can order a sale of mortgaged

premises, where the creditor applies to the court for that purpose, and that, under the decree ordering such sale, a good, valid, and sufficient legal title to the premises may be made to pass to the purchaser. It is the practice in England, under the bankrupt law of that country, for the courts to direct a sale of collateral securities upon the application of the creditors, and the right of this court to order such sale in the cases stated is recognised by Mr. Justice Story in Re Grant [Case No. 5,690], where he says that "there can be no doubt that the creditor holding securities is enabled to prove his debt upon his offer to surrender, and actually surrendering, those securities, to be disposed of according to the order and direction of the court, and that he is entitled to prove his debt, deducting the true value of the securities therefrom; that true value, when ascertained, being paid or applied by the court for the exclusive benefit of such creditor"; and that "the court shall have full authority to ascertain the true value by a sale, or by an appraisement, or in any other mode which it shall deem best for all concerned in the estate."

But, supposing that the mortgage of the bankrupt shall not come within the proviso of the second section of the act, that it is not one of those mortgages "on property, real or personal, which may be valid by the laws of the states, respectively, and which are not inconsistent with the provisions of the second and fifth sections of that act," the question now arises whether this court has jurisdiction of proceedings instituted by the assignee of the bankrupt to set aside such mortgage. The second section provides "that all future payments, securities, conveyances or transfers of property, or agreements made or given by a bankrupt, in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, surety, or other person any preference or priority over the general creditors of such bankrupts," and all other payments, securities, &c., in contemplation of bankruptcy made or given to any person, not being a bona fide creditor or purchaser for a valuable consideration, without notice, "shall be deemed utterly void and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover and receive the same as part of the assets of the bankruptcy." There is here an express authority given to the assignee to "sue for" property conveyed in violation of the provisions of this section, though it is true that the district court of the United States is not specially designated in this section as the court in which such suit shall be brought; but the authority of the court to entertain jurisdiction of such suit, I apprehend, is to be found in the 6th and 8th sections of the act. The 6th section declares "that the district courts in every district shall have juris-

diction in all matters and proceedings in bankruptcy, arising under this act, and any other act which may hereafter be passed on the subject of bankruptcy; the said jurisdiction to be exercised summarily in the nature of summary proceedings in equity;" and afterwards specifies certain cases of controversy to which the jurisdiction of the court shall extend, which, on the authority of the case of Ex parte Martin [Case No. 9,149], I consider as affirmative, and not restrictive of the preceding clause. If then, as I have stated, the clauses of this section, enumerating particular cases of controversy to which the jurisdiction of the court shall extend, are not to be regarded as restrictive of the general powers conferred by the first clause of the section, the language used in the first clause is sufficiently comprehensive to embrace every matter and proceeding in bankruptcy arising under the act; and a suit brought by the assignee of a bankrupt to have a mortgage cancelled, which is declared by the act to be utterly void, and a fraud upon it, is, I conceive, a matter and proceeding in bankruptcy, arising under the act. The 8th section, too, as I have already remarked, confers jurisdiction, in my opinion, on the district court of the United States, of all suits brought by the assignee of the bankrupt to cancel a mortgage, void by the law. The first clause of this section declares "that the circuit court within and for the district where the decree of bankruptcy is passed, shall have concurrent jurisdiction with the district court of the same district, of all suits at law and in equity, which may and shall be brought by any assignee of the bankrupt against any person or persons claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt, transferable to, or invested in such assignee." Under this section, the person against whom the assignee of the bankrupt shall bring his suit must claim an adverse interest to that of the assignee for the United States court to entertain jurisdiction of the case. It is therefore necessary to ascertain the extent of the interest of the assignee of the bankrupt in the property mortgaged, before we can determine whether the interest of the mortgagee is adverse to his. "All property of the bankrupt, mortgaged or pledged to others by the bankrupt before his bankruptcy, vests in the assignees, subject to the claim or lien the mortgagee or pawnee has upon it, or, in other words, the equity of redemption in the case of a mortgagee, and the right to redeem, and the right of property when redeemed, in the case of a pledge, vests in the assignees by their appointment." Archb. Bankr. p. 223. But in the case of a mortgage adjudged fraudulent and void, the property remained in the bankrupt, and by the bankrupt law became vested in his assignee (per Spencer, J., in the case of Sands v. Codwise, 4 Johns. 536). The person, then, claiming under a mortgage void by law, claims an interest adverse to the assignee of the

bankrupt, who, by virtue of his appointment, takes all the property and rights of property of the bankrupt, subject only to valid and existing liens thereon; and the assignee of a bankrupt may therefore well be considered as authorized, under this section, to bring suit in the circuit court or district court of the United States, to try the validity of a mortgage against the mortgagee who in such suit will claim an interest directly adverse to the interest of the assignee.

Such being the jurisdiction of this court, according to my views of the subject, it is proper now to enquire whether this jurisdiction is exclusive or concurrent with the state courts. There is certainly no language used in the bankrupt act of 1841 expressly granting an exclusive jurisdiction to the courts of the United States in the cases above stated; and the absence of any record conveying such a grant should raise the presumption that it was not the intention of congress to confer it. In the judiciary act of 1789 (1 Story's Laws, 50) [1 Stat. 73], the extent of the jurisdiction of the federal courts is not left to implication, and, whether the same is to be exclusive or concurrent, the powers conferred by congress are so clearly designated that there can be no mistake on the subject; "showing that, in the opinion of that body, it was not sufficient to vest an exclusive jurisdiction where it was deemed proper merely by a grant of jurisdiction generally." Houston v. Moore, 5 Wheat. [18 U. S.] 26. I do not mean to be understood as saying that to give exclusive jurisdiction to the federal courts it is necessary that it should be expressly stated in the act conferring the authority, but I do mean to say that the grant of jurisdiction generally to the district and circuit courts of the United States, contained in the 6th and 8th sections of the act of 1841, already quoted and commented upon, is not sufficient to vest in these courts an exclusive jurisdiction in all matters and proceedings in bankruptcy, arising under this act, or in the cases therein specially enumerated. To vest exclusive jurisdiction in the district court, the grant should be expressed in language, the fair and reasonable interpretation of which will bear that meaning; such, for instance, as in the 7th section of the act of 1841, designating the district court for the district in which the bankrupt shall reside or have his place of business as the court in which all petitions for the benefit of the act shall be had, and in which proofs of debts and other claims against the bankrupt's estate shall be open to contestation; as in the 9th section. directs "that all sales, transfers and other conveyances of property shall be made at such times and in such manner as shall be ordered and appointed by the court in bankruptcy," and that "all assets received by the assignee in money, shall within sixty days afterwards be paid into the court, subject to its order, respecting its future safe keeping and disposition;" as in the 10th section of the act, making it the duty of the court to order and direct a collection of assets, and a dividend of the same among the creditors who have proved their debts; and as, also, in the 11th section of the act, authorizing "the assignee, under the order and direction of the proper court in bankruptcy, to redeem and discharge" any liens on the property of the bankrupt, and to compound debts, &c., due or belonging to the estate of the bankrupt. In these cases, and in others, which can be pointed out on a reference to the provisions of the law, the jurisdiction vested in the federal courts is necessarily exclusive, and there would be a direct incompatibility in the exercise of similar powers by the state courts. I am aware that in the opinion which I have expressed as to the jurisdiction of the district court in matters and proceedings in bankruptcy, arising under the act, I may be considered as coming in conflict with the judgment pronounced by Mr. Justice M'Kinley in the circuit court of the United States for the Eastern district of Louisiana, in the case of Walden's Assignee v. City Bank [unreported], relied on in the argument of this case at the bar; but, however great may be my respect for that judgment, I am bound to decide the case submitted to my consideration according to the deliberate convictions of my own mind; and, without presuming to comment on that decision, I will remark that, even in that case, authority may be found for the position taken in this that the jurisdiction of the district court is not exclusive in all matters in bankruptcy, as the learned judge states in one part of his decision that the jurisdiction of the district court of this state (Louisiana) over the subject upon a proper case is not doubted."

The jurisdiction, then, of this court of the case made by the pleadings being concurrent with the state court, the next question is as to the court which should have the decision of the matter, and the rule laid down in the case of Smith v. McIver, 9 Wheat. [22 U. S.] 535, is the correct and sound rule on this point. "In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." But here the question arises as to which court first took possession of the subject. On the part of the present complainants it is contended that the petition of the bankrupt for a decree of bankruptcy is a suit for the benefit of all the creditors, and that the filing of his petition is the commencement of such suit; but I apprehend it is not regarded as a commencement of the suit for the creditors who hold securities excepted from the provisions of the act, but only for those creditors who must come in and prove their debts, "under such bankruptcy," in the manner prescribed by the act, before they will be entitled to share in the bankrupt property and effects. Viewing the subject in this aspect, the state court of chancery first had possession of the matter now before this court, the bill to foreclose the mortgage in question having been filed in that court, before the bill of the pres-

ent complainants, to set aside that mortgage, was filed in this court; but I think it is a matter of very little consequence in which court the validity of the mortgage shall be tried. The state, as well as the federal, tribunals are bound to administer the bankrupt law according to its provisions, as a law passed in conformity to the powers delegated to congress by the constitution of the United States. The act of August 19, 1841, is the supreme law of the land, and equally binding upon the courts of the federal and state governments. Any argument, therefore, upon which the present complainants might rely in this court, to cancel the mortgage, could be urged with equal force in the proceedings now pending in the state court, to which they have been made parties, as assignees of the bankrupt; and if, in that case, it should be decided that the mortgage is void, and a fraud upon the bankrupt act, the mortgaged property would pass into the hands of the assignees of the bankrupt, to be held by them subject to the order and direction of this court.

I might here close this opinion, and would do so, but for the position assumed by the counsel for the mortgage creditors as to the powers and authorities of this court in granting injunctions. To pass over in silence the question presented by them might be construed into an acquiescence in their views, and, to avoid such result, it is proper that I should make a few remarks on the subject. The right of this court to issue injunctions under its chancery powers was not disputed, but it was contended in the argument at the bar that this court has no authority to order injunctions against suitors in a state court, and the counsel rested their argument on the 5th section of the judiciary act of congress of March 2, 1793 ([1 Stat. 333], 1 Story's Laws, 311), which directs that no writs of injunction shall be granted to stay proceedings in any court of a state; quoting, in support of their view of the subject, the decision in the case of Diggs v. Wolcott, 4 Cranch [8 U. S.] 179, to the effect that a court of the United States cannot enjoin proceedings in a state court. Without disputing this law, or the authority of the decision referred to, I think it may well be questioned whether an injunction to restrain an individual suitor is an injunction against the proceedings of a court; and such a distinction between the two injunctions is drawn in the case of Bushby v. Munday, 5 Madd. 305, where the vicechancellor of the court of chancery in England held that "if a defendant who is ordered by this court to discontinue a proceeding which he has commenced against the plaintiff in some other court of justice, either in this country or abroad, thinks fit to disobey that order, and to prosecute such proceeding, this court does not pretend to any interference with the other court; it acts upon the defendant by punishment for his contempt in his disobedience to the order of

the court," that the injunction in no manner breaks in upon the absolute independence of the court, and touches only the party affected by it. But the jurisdiction of this court, in cases of application for injunction, does not rest on the act of March 2, 1793, or on that of the 13th of February, 1807 (2 Story's Laws, 1043 [2 Stat. 418]). In the case Ex parte Foster [Case No. 4,960], Mr. Justice Story held this language: "I lay it down as a general principle that the district court is possessed of the full jurisdiction of a court of equity over the whole subject matters which may arise in bankruptcy, and is authorized by summary proceedings to administer all that relief which a court of equity could administer, under the like circumstances, upon a regular bill and regular proceedings, instituted by competent parties. In this respect the act of congress, for wise purposes, has conferred a more wide and liberal jurisdiction upon the courts of the United States than the lord chancellor, sitting in bankruptcy, was authorized to exercise. In short, whatever he might properly do, sitting in bankruptcy, or sitting in the court of chancery, under his general equity jurisdiction, the courts of the United States are, by the act of 1841, competent to do." And in a later case, that of Carlton [Case No. 2,415], the same learned judge states that "there is no statute of the United States which imposes the slightest limitation upon the exercise of the power to issue injunctions, or requires notice thereof, unless in cases provided for by the act of congress of the 2d of March, 1793 (chapters 22, 66, par. 5), and the act of congress of the 13th of February, 1807 (chapters 58, 68). But neither of these statutes has any application to cases in bankruptcy in the district court, nor, indeed, to any cases except those which are pending in the circuit court, in the exercise of its ordinary jurisdiction. The former act requires reasonable notice of the application for an injunction to be given to the adverse party before the injunction is granted in causes pending in the circuit court. The latter act confers authority on the district judges to grant injunctions in like manner, upon notice, in all cases pending in the circuit court. These acts, therefore, do not touch the jurisdiction of the district court in the administration of equity in bankrupt cases, and, as they do not contemplate the classes of cases created by the bankrupt act of 1841, it is obvious that their provisions are inapplicable to it, and leave the jurisdiction to grant injunctions upon the general practice and principles which govern courts of equity. I am willing to take this exposition of the law as my guide on this subject, more particularly, too, as, within the possession of the right by the district court to issue injunctions against any persons who may interfere with the due administration of the assets of the bankrupt's estates, subject to the order of the court, under the bankrupt act of

1841, the provisions of that law might be defeated.

Various other questions have been raised by the present complainants in the matter now before this court which I do not deem proper subjects for inquiry on their motion for an injunction; and, in accordance with the views taken by me of the questions considered, I refuse the motion.